# Richmond

## JAMES VIRGIL ALLARD V. COMMONWEALTH OF VIRGINIA

April 21, 1978.

Record No. 770629.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Royston Jester, III; Royston Jester, IV (Jester and Jester,* on brief) for plaintiff in error.

*Robert H. Anderson, III, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief) for defendant in error.

HARRISON, J., delivered the opinion of the Court.

In this criminal appeal we consider whether the trial court erred in refusing to grant the defendant an instruction relating to the corroboration of the testimony of an accomplice.[1] James Virgil Allard, having elected trial by jury, was convicted in the court below of statutory burglary and sentenced to confinement for five years in the penitentiary.

About midnight on October 14, 1976, Lynchburg police officers discovered that a jewelry store operated by the Lynchburg Stamp & Seal Company had been burglarized. Thereafter, Lloyd Howard Rosser admitted that he had broken and entered the building, and he implicated the defendant, Allard, in the burglary. The defendant says that the testimony given by Rosser, an accomplice, was uncorroborated and that the court erred in not giving a cautionary instruction.

In the recent case of *Dillard* v. *Commonwealth,* 216 Va. 820, 224 S.E.2d 137 (1976), we enunciated the principles that determine when a cautionary instruction should be given in cases involving the testimony of accessories. There we noted that such an instruction should be granted in the absence of the corroboration of an accomplice's testimony. We rejected the defendant's argument that independent evidence supporting the ultimate fact that the accused committed the offense charged

---

[1] "Instruction C.
"The Court instructs the jury that under the testimony given by Lloyd Rosser in this case, he was an accomplice in the commission of the offense charged in the indictment, and while the jury may find its verdict upon the uncorroborated testimony of an accomplice, such evidence is to be received with great caution, and the Court, in this case, warns the jury of the danger of basing a verdict on the unsupported testimony of an accomplice.
"The Court further instructs the jury that the testimony of an accomplice must be received with great care and caution, and if you believe the testimony of an alleged accomplice was false, and that he was induced to testify falsely, either by fear of punishment or hope of reward, you must disregard that testimony in its entirety."

was required to be shown. We held that a less demanding test, the "relation to guilt standard", was the proper test and said:

"The corroborative evidence, standing alone, need not be sufficient either to support a conviction or to establish all the essential elements of an offense. If those were the requirements, and the Commonwealth had at hand independent evidence sufficient to satisfy them, then the need to use accomplice testimony would not arise.

\* \* \*

"Where, therefore, the testimony of an accomplice is corroborated in material facts which tend to connect the accused with the crime, sufficient to warrant the jury in crediting the truth of the accomplice's testimony, it is not error to refuse a cautionary instruction. This rule applies even though the corroborative evidence falls short of constituting 'independent evidence which supports the alleged ultimate fact' that the accused committed the offense charged." 216 Va. at 823-24, 224 S.E.2d at 140.

In *Dillard* we quoted from *Jones* v. *Commonwealth*, 111 Va. 862, 869, 69 S.E. 953, 955 (1911), where we said: "[T]he corroboration or confirmation must relate to some fact (or facts) which goes to establish *the guilt* of the accused." We found the test in *Jones* to be the proper standard, observing that it was "not as rigid as the ultimate fact test". 216 Va. at 823, 224 S.E.2d at 140. In the instant case we must analyze the testimony to determine whether, as stated in *Jones*, the corroboration of the testimony of Rosser "related to some fact which goes to establish" the guilt of Allard, or, as stated in *Dillard*, such corroborative testimony "tends to connect" Allard with the burglary. If so, it was not error for the court to have refused a cautionary instruction.

█ Rosser testified at length regarding the events that led up to and followed the breaking and entering of the jewelry store on October 13th. He said that he and Allard got together in the early afternoon hours at his father's apartment; that they had several drinks there and that he and Allard "were together about all day from then on, and we went drinking, just messing around and stuff"; that Allard suggested that they break into the Lynchburg Stamp & Seal Jewelry Store because "we could

probably get the money out of there"; and that, while he demurred at first, he was eventually persuaded to participate in the burglary. Rosser said that they entered the building about 10:30 or 11:00 p.m.; that although they searched through the store they were unsuccessful in their efforts to find any money; that after they left the building they went to a nearby bar, referred to in the evidence as the Virginia Grill and as Ginger's Diner, where they "drank a few beers". Rosser said that while they were in the bar he observed several Lynchburg policemen who were investigating the burglary which by then had been discovered by the police.

Rosser admitted that at the time of his arrest for breaking and entering the jewelry store he asked police officer Viar "if Mr. Allard had been charged with the same thing". It was after Rosser was told that his fingerprints had been found on some broken glass in the jewelry store that he confessed and gave the statement which implicated Allard.

M. D. Roach of the Lynchburg Police Department testified that he investigated the burglary on the night of the break-in and that in the course of the investigation he and other officers went to Ginger's Diner. He said that there he saw both Rosser and Allard, who were together. When asked if Allard did anything unusual on the occasion, he replied in the affirmative, saying that he [Roach] "remained outside along with several other police officers, and James Allard came up to me and wanted to know what we were doing". Roach said that Allard wanted to know "who we were looking for".

Allard was called as a witness on his own behalf and testified that he had previously been convicted of a felony. He denied participating with Rosser in the burglary but recalled little else about what he did or whom he saw during the afternoon and evening of October 13th. He admitted being with Lloyd Rosser and said that they had been "just fooling around, hanging around" and drinking. He recalled being at Ginger's Diner but did not know when he got there. He said that he stayed there until closing time and that Rosser left a little earlier by himself. He testified that there were "a bunch of other people" at the diner but that he did not know who they were or who was serving behind the counter on this night. Allard admitted that while at the diner the police officers showed up on the outside and that he went out and asked Officer Craig "who was he looking for".

The defendant was specifically asked, "Were you continuously with him [Rosser] from the time you got with him that afternoon and went to Ginger's place, did you go there together?" He responded, "Yes, sir." While Allard testified that he had no idea what time they got to the diner, or how long they stayed there, when asked, "And Rosser was with you the whole time, you and Rosser the whole time?" he said, "Yes, sir, we was together." He was further asked, "Was Lloyd Rosser with you in your presence the whole night at Ginger's Diner?" He answered, "Yes, sir, up until the time he went home."

The evidence given by Rosser was clear and concise. While, admittedly, he hoped for leniency by the court, he said no promises had been made to him by the prosecution. The burglary was established not alone by Rosser's confession, but by his fingerprints found at the scene. He implicated his friend and drinking companion, Allard. The facts and circumstances surrounding the burglary tend to connect Allard with the crime. They include the close relationship and association of the two men; Rosser's inquiry if Allard had been arrested in connection with the burglary made before Rosser had admitted his own involvement in the crime or had implicated anyone else therein; the vague and evasive testimony given by the defendant; the inability of the defendant to recall the events of the day and evening on which the crime was committed; the admission by defendant that he was with Rosser the entire afternoon and evening of October 13th; the failure of Allard to call any witness to show that he remained in the diner the entire evening, or that he was there alone at any time during that evening; and the conduct of Allard which aroused the suspicions of the police officers during their investigation of the burglary.

We can only conclude that if Rosser and an accomplice burglarized the jewelry store on the night of October 13, 1976, and that if Rosser and Allard were together during the entire evening, a fact which the trial judge could have found from the testimony, Rosser's accomplice was Allard. The occasion and opportunity for Allard to have committed the crime were clearly shown. *See Crosby v. Commonwealth*, 132 Va. 518, 110 S.E. 270 (1922), and *Russell v. Commonwealth*, 216 Va. 833, 223 S.E.2d 877 (1976).

In *Smith* v. *Commonwealth*, 218 Va. 455, 237 S.E.2d 776 (1977) we held it error for a cautionary instruction to have been refused. However, in *Smith* there was no evidence other than that of the accomplice which connected the defendant with the crime. Thus, the accomplice's testimony was not sufficiently corroborated.

The testimony of Rosser was corroborated in many of the material facts which related to and tended to connect Allard with the burglary charged, and to such an extent that the trial judge was warranted in crediting the truth of the testimony of the accomplice. It was not error, therefore, for the trial court to have refused the defendant's cautionary instruction. We find no merit in defendant's other assignments of error.

*Affirmed.*