## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### ARNOLD STEWART CLARK
#### v.
### COMMONWEALTH OF VIRGINIA

August 31, 1978.

Record No. 770811.

Present: All the Justices.

*Alvin B. Fox (R. Rick Reiss; Ellenson, Fox and Wittan, Inc.,* on brief) for appellant.

*Jim L. Chin, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief) for appellee.

COCHRAN, J., delivered the opinion of the Court.

A jury found Arnold Stewart Clark guilty of burglary, murder, and two counts of robbery, and fixed his punishment at confinement in the State penitentiary for 10, 30, 20, and 20 years, respectively. The trial court entered judgment on the verdict. On appeal, the questions raised by Clark are whether the trial court erred in restricting his cross-examination of certain Commonwealth witnesses and in refusing to grant his proffered instruction cautioning the jury as to testimony of accomplices.

The uncontradicted evidence shows that after 11:00 p.m. on October 28, 1976, Jerry Cooper and John Edwards broke into the residence of Mr. and Mrs. John Simpson Jarvis in Newport News, threatened Mrs. Jarvis, and robbed the Jarvises of jewelry, silver, and cash. While committing the robbery, Edwards killed Jarvis by cutting his throat with a knife.

Mrs. Jarvis identified Cooper as the intruder who threatened her while his companion overpowered her husband. She testified that a few nights before the crimes were committed, she and her husband heard a knock at their door and her husband found three unidentified men outside who said they were looking for someone else and departed. She also testified that Clark had been a constant visitor in the Jarvis home some ten years earlier, when he had lived nearby.

Franklin Marshall testified that Clark asked him if he could find someone to break into the Jarvis dwelling and once drove him past the property to point it out as a burglary target. Clark subsequently asked Cooper if he knew "anybody that was doing burglaries," and Cooper replied that "he would do it" if there was enough money involved. Clark assured Cooper that there was jewelry, silver, and money in the Jarvis residence, and showed Cooper where the house was located.

Marshall further testified that he went with Cooper and Edwards to the dwelling on October 25, with the intention of breaking in. Marshall, armed with a tire iron as the three approached the house, looked in a window, recognized the Jarvises as people with whom he went to church, and refused to proceed with the crime. When Jarvis came to the door and asked what the men wanted, Cooper inquired for a fictitious person, after which the three intruders withdrew. Cooper and Edwards accused Marshall of cowardice and, either that night or the next, Clark joined the others and he, Cooper, and Edwards all ridiculed Marshall for being "a chicken and a coward." That same night, Marshall said, Cooper and Clark discussed the advisability of entering the Jarvis house on Halloween, using masks. Cooper and Edwards planned to look for another accomplice because Marshall had "chickened out."

Several nights later, Marshall asserted, Cooper and Edwards informed him that they had perpetrated the Jarvis burglary and robbery. At their request, he telephoned Clark, who came to Cooper's apartment, viewed the stolen goods, and promised to return in the morning to dispose of them. When Clark was told that Jarvis's throat had been cut during the robbery, his reply was that Jarvis "ought to be dead anyway." Shortly thereafter, Marshall found a detective to whom he reported the crimes. Marshall accompanied law enforcement officers to the apartment building in which the Cooper apartment was located, received $300 from the police, and departed the area. Police arrested Cooper and Edwards in Cooper's apartment at approximately 4:00 a.m. on October 29; they arrested Clark when he returned to the apartment at 7:30 a.m. that morning.

At the time of Clark's trial, Cooper had been indicted but not tried. Testifying as a witness for the Commonwealth, Cooper said that Clark suggested to Marshall that they tell Cooper "about the place we're going to rip off." He used to go with the Jarvis's daughter, Clark related, and Mrs. Jarvis kept about a million dollars in jewelry and a hundred thousand dollars in silver in the house. Clark drove Cooper in an automobile to view the house.

Cooper's account of the abandoned attempt to enter the Jarvis house was similar to Marshall's version. Cooper further testified

that all four, Clark, Marshall Edwards, and Cooper, planned to commit the crime on Halloween, but that he and Edwards broke in before that date "to help Marshall out," because Marshall needed money. Clark did not know that Cooper and Edwards were going to act when they did, but he had instructed them, "Whenever you're ready, you know, if you all do it, go ahead and do it, and just let me know." They took the stolen goods to Cooper's apartment where Clark, through a telephone call initiated by Cooper, was requested to join them for a "party." Upon his arrival, Clark was told that Jarvis had been killed during the robbery, to which information he commented, "Good." He then looked at the loot, priced some of it, and said that he would come back at 7:00 a.m. to pick it up "if he got a sale for it."

Cooper's wife testified that when Clark came to look at the jewelry and silver he expressed pleasure that Edwards had killed Jarvis and said that Mrs. Jarvis also should have been killed. Mrs. Cooper said that, prior to the commission of the crimes, she heard Clark, referring to the Jarvis home, tell her husband that the "old woman" could not scream and the "old man" would not give them any trouble. According to Mrs. Cooper, Clark said that he could get $250 for two teapots taken in the robbery.

Edwards had pleaded guilty to the charges against him and was awaiting sentencing when he testified that Clark had told Cooper and him where everything of value was located inside the Jarvis house. Edwards further stated that while Clark never planned to accompany them on the burglary he had "set it up." When Edwards told Clark that he had killed Jarvis, Clark replied, "Well, that's all right. The guy was old anyhow." Edwards denied that there was a plan to commit the crimes on Halloween.

Clark, testifying in his own defense, said that he only mentioned the Jarvis house to Marshall to encourage him to go out with the Jarvis's daughter. He said that when he, Marshall, and Cooper sat around drinking they frequently talked about breaking into different places, including the Jarvis property, but he did not realize the others were serious until they told him of their abandoned effort to break into the Jarvis house. He did not know of the crimes in question until he was awakened one morning at 1:00 a.m. by a telephone call from Marshall asking him to come to a party at the

Cooper apartment. When he arrived at the apartment he was shown the stolen goods, and was told that "they" had murdered "somebody." He was "scared . . . to death", so he told them he would be back the next day and went home. Clark insisted that he returned in the morning only for the purpose of picking up Marshall to work on a vacant lot of Clark's in Williamsburg. Clark admitted that he knew the Jarvis family. He conceded that he had some knowledge of the value of antiques because he had formerly operated an antique shop. He also acknowledged that he had told the group assembled in the Cooper apartment after the crimes had been committed that the stolen goods displayed there were valuable and that he "guess[ed]" they could be sold.

Before Cooper testified, the trial court was advised that both Cooper and Edwards wished to testify for the Commonwealth, and that the Commonwealth's Attorney had conferred with their counsel as to the effect of Code § 19.2-270[1] and had agreed that whatever they said in court against Clark would not be used against them in their cases except for impeachment and perjury purposes. Counsel for Clark said that the jury should be informed of the agreement between the Commonwealth and counsel for Cooper. The Commonwealth's Attorney replied that he intended to prosecute Cooper (Edwards had already been tried on a guilty plea) based upon the evidence already in hand. The trial court stated that Clark's counsel could show the jury that an agreement with Cooper had been reached but if he did so, the court would permit the Commonwealth's Attorney to inform the jury that he was going to prosecute the accomplice on the evidence already available. We find in the record no objection made by Clark to this statement of the trial court which Clark now contends improperly restricted his rights to cross-examine the accomplices. Therefore, we will not notice this alleged error which was not challenged at trial. Rule 5:21.

Clark's principal argument is that the Court erred in refusing

---

[1] *§19.2-270*. **When statement by accused as witness not received as evidence.** — In a criminal prosecution, other than for perjury, or in an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination, unless such statement was made when examined as a witness in his own behalf.

to grant Instruction A² which he proffered, and which the trial court refused on the ground that the testimony of the accomplices, Cooper and Edwards, was not uncorroborated. We do not agree with Clark's contention.

The principles that determine whether a cautionary instruction is required in cases involving the testimony of accomplices are now firmly established. Such an instruction should be granted where the accomplice's testimony is uncorroborated. *Allard v. Commonwealth*, 218 Va. 988, 243 S.E.2d 216 (1978). It need not be given if such testimony is corroborated "in material facts which tend to connect the accused with the crime, sufficient to warrant the jury in crediting the truth of the accomplice's testimony." *Dillard v. Commonwealth*, 216 Va. 820, 823, 224 S.E.2d 137, 140 (1976), quoted in *Allard, supra*, 218 Va. at 990 , 243 S.E.2d at 217.

Applying the foregoing test to the facts in the present case, it is apparent that the trial court did not err in refusing to grant a cautionary instruction. There was ample evidence to corroborate the testimony of Cooper and Edwards in material facts which tend to connect Clark with the crimes.

Although Marshall may have been an accomplice in the planning of the burglary and robbery at the Jarvis residence and in the abortive attempt of October 25, he thereafter abandoned the criminal enterprise and was not an accomplice in the crimes that were actually committed. Indeed, when informed of the commission of the crimes, he promptly sought out a detective, reported information concerning the crimes, and directed law enforcement officers to Cooper's apartment, where the arrests were made. Marshall's testimony was competent, therefore, to corroborate that of Cooper and Edwards that Clark engineered the criminal plot, solicited the active participation of the accomplices, remained in the background because he was known to the Jarvises, and assumed responsibility for selling the stolen goods.

Mrs. Cooper also corroborated the testimony of the accomplices

---

² Instruction A purported to caution the jury as to the testimony of accomplices. We do not set forth the instruction herein because, although it was an incorrect statement of the law and could have been refused on that ground, the trial court characterized it as properly drafted, but rejected it on the ground that no cautionary instruction was required.

as to material facts that tend to connect Clark with the crimes. She testified to the assurances given by Clark to the accomplices that only feeble resistance from the Jarvises could be anticipated, to the satisfaction expressed by Clark at the report that Jarvis had been killed, and to the value placed by Clark on some of the stolen items.

Moreover, Clark's own testimony that tends to connect him with the crimes furnishes corroboration of the testimony of the accomplices. *See Russell* v. *Commonwealth*, 216 Va. 833, 837, 223 S.E.2d 877, 879-80 (1976). Clark admitted that he knew the Jarvises and was familiar with their house. He admitted discussing possible burglaries of houses, including the Jarvis residence, with Marshall and Cooper, although he attempted to dismiss these discussions as idle conversation among drinking companions. He admitted, as did his wife, that he was informed of the abandoned burglary attempt at the Jarvis house. He admitted that he had accepted without question the "party" invitation which awakened him after midnight, but offered as an explanation his assumption that Marshall needed money or was in some kind of trouble. Clark also admitted that he had promised to return to the Cooper apartment to dispose of the stolen goods, although he insisted that he returned only for another and innocent purpose. Nevertheless, his reappearance at the time and place the police waited for him to come back for the loot, corroborated the testimony of Marshall, Cooper, Mrs. Cooper, and Edwards.

For the reasons assigned, we hold that there is not reversible error in the rulings of the trial court, and the judgment order will be affirmed.

*Affirmed.*