**Alexandria**

JAMES LEON JOHNSON

v.

COMMONWEALTH OF VIRGINIA

No. 0096-84

Decided August 5, 1986

COUNSEL

Thomas J. Harrigan (Robert L. Tomlinson II, on brief), for appellant.

Lucy H. Allen, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.** —In this appeal from convictions for first degree murder and robbery, we examine two rulings by the trial court. The first involves the admission of evidence which the appellant contends was of his bad character, admitted over his objection. The second challenges the court's refusal to grant a cautionary instruction to the jury on circumstantial evidence.

The evidence presented at trial by the Commonwealth revealed that Lorraine Parsons, the victim, was last seen alive by Susan Moles at 3:30 p.m. on November 5, 1983, at the apartment they shared in Arlington. Ms. Parson's body was discovered by Ms. Moles and her boyfriend when they returned to the apartment between 8:00 and 8:30 p.m. that evening. The cause of death

was determined to be strangulation. Three hairs which were recovered from the victim and the apartment were determined by comparative analysis not to have come from the victim or from the other individuals who were known to have been in the apartment.

The appellant, James L. Johnson, who was on leave from Camp Lejuene, North Carolina, was visiting the Washington, D.C. area on November 5. Johnson shared quarters at Camp Lejuene with Gregory A. Johnson, Ms. Parsons' fiance. Gregory Johnson had told the appellant, who was a native of the Washington area, about his girlfriend and had disclosed where she lived and the place where she worked in Washington. The evidence also showed that Ms. Parsons' home address was written on Gregory Johnson's desk blotter in the office in which the appellant worked and that letters with her home address written on the envelope were received in the office. Although the appellant and Ms. Parsons had never met, they had talked on the telephone when he mistakenly answered her calls to Gregory Johnson.

During the week prior to Ms. Parsons' murder, the appellant twice went to the restaurant where she was employed and asked for her. The bartender, Juan Ojeda, testified that on both occasions the appellant gave him only his last name and left when he did not find Ms. Parsons there.

On the evening of November 4, the day before Ms. Parsons' murder, the appellant had dinner with Ronald E. Jones, who testified that Johnson was short of cash, borrowed five dollars from him and had no other money. The evidence established that on the afternoon of November 5 at about 5:45 p.m., Johnson borrowed the car of Ms. Juanda Smith purportedly to go to Virginia to pick up luggage. Although Ms. Smith had specifically directed that he return by 7:00 p.m., he did not return until shortly after 8:00 p.m., at which time they went to dinner. The appellant paid cash for the bill of approximately twenty-five dollars.

After the homicide, on November 6 or 7, the appellant was seen in possession of three rings which were identified as belonging to Ms. Parsons. On November 23 the Arlington police recovered the three rings from a local jewelry store where they had been pawned. The pawn records, which were determined to match the appellant's handwriting, revealed that the items had been sold by

James L. Johnson of Camp LeJuene, North Carolina. Appellant was also seen in possession of a camera, similar in all respects to a camera belonging to Ms. Parsons, and an Italian horn necklace belonging to her. When the appellant was arrested in Wilmington, North Carolina on November 13, he was allowed to go to his bedroom to collect his belongings and was observed removing from a tote bag three necklaces and a camera, which he explained he was leaving because they belonged to his girlfriend. The camera was identified as belonging to Ms. Parsons. Following Johnson's arrest a hair sample was taken from him and, upon comparative analysis, was found to be visually consistent with regard to approximately forty characteristics with the three samples taken from the victim's body and apartment.

## I.  *THE EVIDENTIARY ISSUE*

The challenged evidence consisted of testimony from Gregory Johnson that he had instructed Ms. Parsons not to speak to the appellant on the telephone after the appellant had on at least two occasions intercepted her calls. Gregory Johnson testified that the reasons he gave her were that she could not afford it and because "he is a pervert." The appellant contends that the statement, "he is a pervert," dealt with "peripheral areas which don't deal with the issue" and was character evidence which was inadmissible and prejudicial. The appellant elected not to testify, and he did not place his character in issue. In admitting the evidence, the trial court stated: "The jury is instructed . . . [that] the question and answer are received not for the truth of the words of Gregory Johnson, but to show that that was put into the mind of Lorraine Parsons." We hold that the evidence was inadmissible, but its admission was harmless error.

For the statement, "he is a pervert," to have been admissible it must have been both relevant and material; otherwise, as the appellant notes, the focus of the trial would be diverted to peripheral and extrinsic matters that had little or no bearing upon proof of the elements necessary to establish guilt. The ultimate inquiry in determining whether evidence is both material—tending to prove a matter which is properly at issue in the case—and relevant—tending to establish the proposition for which it is offered—is: Does the evidence tend to prove a proposition which is itself provable in the case? C. Friend, *The Law of Evidence in*

*Virginia* § 134 (2d ed. 1983). The Commonwealth asserts that the statement was material to prove force as an element of robbery, and relevant as proof of the victim's state of mind. The Commonwealth reasons that the jury could infer that the victim, hearing that the appellant was a pervert, would not have voluntarily parted with her property; therefore, it follows that force was used to obtain the victim's property. We conclude that the statement was neither material nor relevant in the context in which it was proffered.

Out of court statements offered to show the state of mind of the declarant are admissible in Virginia when relevant and material. *See, e.g., Compton* v. *Commonwealth,* 219 Va. 716, 729, 250 S.E.2d 749, 757 (1979); *Jones* v. *Commonwealth,* 217 Va. 226, 228, 228 S.E.2d 124, 126 (1976); *Karnes* v. *Commonwealth,* 125 Va. 758, 764, 99 S.E. 562, 565 (1919). Similarly, a statement made by a declarant is admissible for the purpose of showing the probable state of mind thereby induced in the hearer, such as being put on notice or having knowledge, or motive, or good faith of the subsequent conduct of the hearer, or anxiety, when relevant and material. E. Cleary, *McCormick on Evidence* § 249 (3d ed. 1984). In the present case, however, it would be illogical, and improper, for the jury to draw an inference that because of Gregory Johnson's statement to Ms. Parsons the accused would have had to have used forcible means to have gained possession of her personal property. The inference suggested by the Commonwealth—that one would not voluntarily give his property to an individual whom he has been told is a pervert—is tenuous at best. Such evidence adds little or nothing to the jury's knowledge of common human behavior that one does not voluntarily part with his valuable personal property to a stranger. Here the value of such evidence to prove force is *de minimus* in light of the evidence of force having been used to the extent that a homicide occurred. We conclude that the evidence had no probative value, or such minimal value, that the court erred in admitting it.

Nevertheless, we conclude that admission of the statement was harmless error beyond a reasonable doubt. The limiting instruction by the court precluded the jury from considering the evidence as proof of the appellant's bad character. We assume that the jury abided by the court's instruction. *LeVasseur* v. *Commonwealth,* 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983). Furthermore, the

statement in the context in which it came into evidence was not so harmful as to be prejudicial, thus requiring reversal. There was no evidence of specific acts or any attempt to explain or detail the statement. In light of the overwhelming circumstantial evidence which established two efforts by the appellant to contact the victim, who was a virtual stranger to him, shortly before her death; his opportunity to have committed the offenses; his unexplained possession of the victim's property immediately after the offenses; his false account of the ownership of the victim's property; and his hair samples being consistent with those found on the body of the victim and in her apartment, the statement could not have affected the jury's finding of guilt or its sentencing recommendation. *See Pflaster* v. *Town of Berryville*, 157 Va. 859, 161 S.E. 58 (1931); *see also United States* v. *Murvin*, 425 F.2d 1204 (4th Cir. 1970) (per curiam).

## II.  *THE JURY INSTRUCTION ISSUE*

The trial court instructed the jury on the elements of the offenses, the burden of proof, and reasonable doubt. The court further told the jury that on the use of circumstantial evidence:

It is not necessary that facts be proven by direct evidence. They may be proven by circumstantial evidence; that is, you may draw all reasonable and legitimate inferences and deductions from the evidence before you. Circumstantial evidence is legal and competent and a person charged with a crime may be convicted upon circumstantial evidence alone or upon a combination of circumstantial and direct evidence if you believe beyond a reasonable doubt from all of the evidence that he is guilty. All necessary facts and circumstances proved, however, must be consistent with the guilt of the defendant and inconsistent with his innocence before he may be convicted.

The trial court refused to grant an instruction submitted by the appellant from Vol. I of the Virginia Model Jury Instructions which read, in pertinent part: "When the Commonwealth relies upon circumstantial evidence, you should consider such evidence *with great care and caution . . . .*" (emphasis added). The appellant cites *Patler* v. *Commonwealth*, 211 Va. 448, 177 S.E.2d 618

(1970); *Webb* v. *Commonwealth*, 204 Va. 24, 129 S.E.2d 22 (1963); and *Smith* v. *Commonwealth*, 171 Va. 480, 198 S.E. 432 (1938), as support for including the cautionary language in a jury instruction.

The appellant emphasizes that the foregoing cases have stated that circumstantial evidence must be treated with caution, but acknowledges that no Virginia case has reversed a conviction for failing to include such language in an instruction to the jury. However, the appellant argues that *Smith* v. *Commonwealth*, 218 Va. 455, 237 S.E.2d 776 (1977), is persuasive authority which compels us to hold that the omission of such cautionary language is reversible error. He notes that in *Smith*, the trial court's refusal to instruct the jury that the uncorroborated testimony of an accomplice should be received with "great care and caution" was declared reversible error, and contends that the underlying rationale for the court's holding in *Smith* is equally applicable here. We disagree.

In *Smith*, the Supreme Court held it error to refuse a cautionary instruction regarding the testimony of an accomplice where an accomplice's testimony was uncorroborated in material facts which tended to connect the accused with the crime. 218 Va. at 456-57, 237 S.E.2d at 777. The reasoning underlying the rule is that accomplice testimony is peculiarly susceptible to influences of bias, prejudice, and motivation for perjury, and therefore involves a problem of reliability. However, when there is any evidence which substantiates an accomplice's testimony in material fact, a cautionary instruction should not be given. *Clark* v. *Commonwealth*, 219 Va. 237, 242, 247 S.E.2d 376, 379 (1978).

The considerations in dealing with circumstantial evidence differ from the problems of reliability involved with uncorroborated accomplice testimony. The questions a jury must address with circumstantial evidence are the same as those which must be addressed in dealing with direct evidence—namely, sufficiency, weight and relevancy. The law in Virginia is clear that circumstantial evidence is as competent and entitled to the same weight as direct testimony, provided that it is of such convincing character as to exclude every reasonable hypothesis other than that the accused is guilty. *Coleman* v. *Commonwealth*, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983); *Turner* v. *Commonwealth*, 218 Va. 141, 145-46, 235 S.E.2d 357, 361 (1977). Circumstantial

evidence alone is sufficient to sustain a conviction. *Green* v. *Commonwealth*, 212 Va. 681, 682, 187 S.E.2d 198, 199 (1972).

The trial court properly instructed the jury on the burden of proof and reasonable doubt and the requirement that all inferences which may be drawn from the evidence must be consistent with guilt and inconsistent with innocence. The jury was fully and adequately instructed on the applicable law and the refusal of a cautionary instruction on circumstantial evidence was not an abuse of discretion. Finding no error, we affirm the convictions.

*Affirmed.*

Baker, J., and Keenan, J., concurred.