COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judge Friedman and Senior Judge Clements
Argued at Richmond, Virginia

UNPUBLISHED

ZAYON LAMONT EVERETT

v.        Record No. 1508-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE MARLA GRAFF DECKER
AUGUST 19, 2025

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Claire G. Cardwell, Judge

Gregory R. Sheldon (BainSheldon, PLC, on brief), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Zayon Lamont Everett appeals his convictions of attempted first-degree murder,

aggravated malicious wounding, malicious wounding, maliciously shooting at a vehicle,

discharging a firearm from a vehicle, and two counts of first-degree murder.  *See* Code

§§ 18.2-26, -32, -51, -51.2, -154, -286.1.  He argues that the trial court erred by not instructing

the jury about the danger of relying on uncorroborated accomplice testimony.  Everett also

contends that the Commonwealth failed to establish his identity as one of the people involved in

the shootings because Baker's testimony was incredible as a matter of law.  For the following

reasons, we affirm the convictions.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

This case stems from shootings in a parking lot that ended in the deaths of two innocent bystanders and the wounding of two others. Everett, Javon Pegram, and Kalah Mangram were charged with the shootings and a number of related offenses. They were tried together as co-defendants.[2]

Around 7:30 p.m. on November 12, 2021, a car drove by the OMG Convenience Store at the edge of a neighborhood in the City of Richmond known as Creighton Court. The occupants of the car began shooting into the parking lot, striking four individuals. Two of the victims died, one of whom was 9 years old and the other of whom was 14. Jacquawn Coe and Trevel Davis were also struck by bullets but survived. Immediately after the attack at the convenience store, gunfire struck the car of Alexia Brooks as she drove nearby with her two children in the car. After firing a barrage of bullets, the assailants fled.

In the early morning hours following the shootings, around 2:00 a.m. on November 13, 2021, Officer Richard Szymanski of the City of Richmond Police Department stopped a car for driving with its headlights off. Pegram and Mangram were in the car, and Szymanski took their photographs.

Several law enforcement officers from the City of Richmond Police Department investigated the shootings involving the convenience store and Brooks's car. Officer Bryan

---

[1] On review of the sufficiency of the evidence supporting a conviction, the Court views the evidence in the light most favorable to the Commonwealth. *See Hargrove v. Commonwealth*, 77 Va. App. 482, 491 n.1 (2023). However, in reviewing a trial court's ruling on a proposed jury instruction, the evidence is viewed in the light most favorable to the instruction's proponent, in this case, Everett. *Pena Pinedo v. Commonwealth*, 300 Va. 116, 118 (2021). Accordingly, this opinion sets out all of the evidence relevant to the issues before the Court.

[2] Pegram and Mangram were also convicted and appealed their convictions. *See Pegram v. Commonwealth*, No. 0207-24-2 (Va. Ct. App. Aug. 19, 2025), and *Mangram v. Commonwealth*, No. 0597-24-2 (Va. Ct. App. Aug. 19, 2025), both decided this day.

Marceau found the car used by the assailants abandoned in a parking lot in Mosby Court, a nearby area in the City of Richmond. A bullet hole was found in the roof of the car. Forensic analysis identified DNA from Clintoine Baker in the vehicle. Baker was arrested, and he later identified Everett, Pegram, and Mangram as his accomplices in the shootings. An AR-15-style rifle was recovered from Mangram's brother that was subsequently connected to the shootings through forensic analysis. During the investigation, law enforcement collected cartridge cases, bullets, and bullet fragments from the area, from the bodies of the victims, and from the two cars involved.

At the jury trial, eyewitnesses and surviving victims testified, but they could not identify the shooters. The Commonwealth's primary evidence identifying the three defendants as the offenders came from Baker. He testified that on November 12, 2021, he, Everett, Pegram, and Mangram left their neighborhood, Mosby Court, intending to find and shoot residents of the rival neighborhood of Creighton Court. He explained that their motivation was simply animosity between the neighborhoods and they did not have any particular individuals in mind. According to Baker, Pegram drove the four of them in a stolen car. They circled the OMG Convenience Store until they spied people leaving the store whom they considered suitable targets. Baker identified the firearms the group used as a 9mm Glock, a .357 or .40, an "AR," and an "AK."

Baker described the parking lot in which they left the stolen car after the shootings. He explained that he attempted to quickly clean the car to remove any evidence that would identify him or his accomplices. Baker also explained that they returned to the area where they had started their evening and briefly went into an apartment. According to him, although he kept his gun, Mangram took the other guns to give to "his people." Baker acknowledged that he had been charged with the same offenses as Everett, Pegram, and Mangram. Detective Ja'Ontay

- 3 -

Wilson testified that he knew the co-defendants from Mosby Court and that the co-defendants and Baker often spent time together.

Other Commonwealth's evidence included a compilation of video surveillance recordings depicting the assailants' route before and after the shootings. The video compilation showed the assailants drive away after the offenses, park, and get out of the car. It then showed their walking path to an apartment building and their movements through a stairwell and into an apartment. During Baker's testimony, he identified himself and the three defendants in the videos. In addition, the compilation included surveillance footage of the parking lot of the convenience store. But not all of the shootings were captured on the recordings due to the placement of the cameras.

Firearms expert Megan Korneke testified about the ballistics evidence. It established that the assailants used five firearms.[3] One of the firearms connected to the stolen car was determined to have fired a bullet recovered from the chest of one of the deceased victims. Ballistics evidence tied a second firearm connected to the car to bullets that struck two other victims, killing one of them.

After the Commonwealth presented its case-in-chief, Everett opted not to present any evidence. He asked the trial court to strike the charges. Defense counsel challenged the sufficiency of the evidence supporting a finding of a permanent injury to Coe. Counsel also suggested that the evidence was insufficient to establish his identity as an assailant because Baker's testimony was inherently incredible as a matter of law. The trial court granted the motion to strike in part, reducing the charge of aggravated malicious wounding of Coe to malicious wounding. It denied the motion as to the other charges.

---

[3] Of these firearms, Baker identified four.

Before jury deliberations began, defense counsel asked the trial court to instruct the jury on the risks of relying on the uncorroborated testimony of an accomplice. The Commonwealth's attorney countered that the instruction was inappropriate because Baker's testimony was corroborated. The court refused the instruction.

After deliberations, the jury returned guilty verdicts on each of the charges: attempted first-degree murder, aggravated malicious wounding, malicious wounding, maliciously shooting at a vehicle, discharging a firearm from a vehicle, and two counts of first-degree murder. Everett was sentenced to 135 years in prison, with 80 years suspended.

ANALYSIS

I. Jury Instruction

Everett argues that the trial court erred by refusing to instruct the jury on the danger of relying on uncorroborated accomplice testimony.

A. Rule 5A:18

The Commonwealth suggests that, under Rule 5A:18, Everett waived his argument that the court erred by refusing to give the jury instruction. It is well established that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in this rule] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Clark v. Commonwealth*, 78 Va. App. 726, 766-67 (2023) (first alteration in original) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)). The Supreme Court of Virginia has held "that one party may not rely on the objection of another party to preserve an argument for appeal without expressly joining in the objection." *Linnon v. Commonwealth*, 287 Va. 92, 102 (2014) (affirming a Court of Appeals

ruling that the objection of one co-defendant could not be imputed to another even though the circuit court had the opportunity to rule on the argument).

During the trial, Everett's counsel informed the court that he would "be requesting an instruction on uncorroborated testimony of a codefendant." When discussing jury instructions, Pegram's attorney informed the trial court that he would "argue about the accomplice liability instruction." The court said, "[Y]ou're asking that the uncorroborated testimony of an accomplice instruction be given?" Everett's counsel replied, "Yes." Pegram's counsel later repeated his request that the trial court "consider the accomplice testimony instruction," arguing that Baker's testimony on the identities of his accomplices was uncorroborated. The trial court denied the request, "find[ing] that there was corroborative evidence."

Everett filed a motion to set aside the verdict, arguing that the trial court erred by failing to give the cautionary instruction about uncorroborated accomplice testimony. The court denied the motion.

The record makes clear that at the outset Everett informed the trial court before the jury-instruction discussion that he planned to "request[] an instruction on uncorroborated testimony of a codefendant." Then although Pegram requested the accomplice instruction, Everett also added that he too was asking for the instruction. Finally, Everett confirmed in his motion to set aside the verdict that he had made the request in a timely fashion at trial. These acts sufficiently preserved his argument for appeal.

## B.  Merits

The instruction would have told the jury it could base its verdict on Baker's "uncorroborated testimony" but warned about the risk of doing so. *See* Va. Model Jury Instrs.— Crim. No. 3.400.

It is well settled that "[w]hen reviewing a trial court's refusal to give a proffered jury instruction," the appellate court "view[s] the evidence in the light most favorable" to the instruction's proponent, in this case Everett. *Pena Pinedo v. Commonwealth*, 300 Va. 116, 118 (2021) (quoting *Commonwealth v. Vaughn*, 263 Va. 31, 33 (2002)); *see Barnes v. Commonwealth*, 81 Va. App. 737, 746 (2024). Whether to grant or deny a proffered instruction is reviewed for an abuse of discretion. *Commonwealth v. Richard*, 300 Va. 382, 389 (2021). Underpinning this review is a "bell-shaped curve of reasonability," which "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." *Warren v. Commonwealth*, 76 Va. App. 788, 799 (2023) (quoting *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013)), *aff'd per curiam*, 303 Va. 60 (2024).

Stated simply, a "reviewing court must determine whether 'the law has been clearly stated and . . . the instructions cover all issues [that] the evidence fairly raises.'" *Barnes*, 81 Va. App. at 746 (second alteration in original) (quoting *Holmes v. Commonwealth*, 76 Va. App. 34, 52 (2022)). After all, "[t]he purpose of any jury instruction is to inform the jury of the law guiding their deliberations and verdict." *Holloman v. Commonwealth*, 65 Va. App. 147, 174 (2015) (quoting *Morgan v. Commonwealth*, 50 Va. App. 120, 132 (2007)).

Although "[a] jury may convict a defendant based solely on accomplice testimony," a "trial court must 'warn the jury against the danger of convicting upon such . . . testimony'" if it is uncorroborated. *Barnes*, 81 Va. App. at 746 (quoting *Dillard v. Commonwealth*, 216 Va. 820, 821 (1976)). In contrast, if the accomplice testimony is corroborated, it is appropriate for the trial court to refuse to give such a cautionary instruction. *See Holmes*, 76 Va. App. at 55. "The burden is on the proponent of an instruction 'to satisfy the trial court that the proposed language

is . . . applicable to the facts of the case on trial.'" *Holloman*, 65 Va. App. at 174 (quoting

*Shaikh v. Johnson*, 276 Va. 537, 546 (2008)). And "[w]hether sufficient corroboration exists is

'a question of law' for the trial court, one that we review de novo on appeal." *Barnes*, 81

Va. App. at 746 (quoting *Holmes*, 76 Va. App. at 55).

So the question here is whether Baker's account was corroborated such that the

cautionary instruction was not necessary. To corroborate the accomplice's testimony, the

evidence "need not be sufficient either to support a conviction or to establish all the essential

elements of an offense." *Id.* at 747 (quoting *Dillard*, 216 Va. at 823). When other evidence

corroborates "material facts [that] tend to connect the accused with the crime," a cautionary

instruction may be refused. *See id.* (alteration in original) (quoting *Dillard*, 216 Va. at 823). For

evidence to sufficiently corroborate accomplice testimony, it must "connect[] the defendant to

the crime and corroborate[] the defendant's 'occasion and opportunity for the crime,'" and be

"sufficient to warrant the jury in crediting the truth of the accomplice's testimony." *Id.* (first

quoting *Holmes*, 76 Va. App. at 57; and then quoting *Smith v. Commonwealth*, 218 Va. 455, 457

(1977) (per curiam)).

Here, the trial court listed the evidence it considered corroborative of Baker's testimony

identifying the defendants as his accomplices. That evidence included the testimony about the

general animosity between the residents of the co-defendants' neighborhood and the

neighborhood where the shootings occurred. The court further determined that the fact that one

of the guns used in the shootings was found in the possession of Mangram's brother corroborated

Baker's testimony that Mangram took most of the guns after the offenses occurred. Importantly,

the trial court also noted the visible faces of the assailants who were together in the video-

recording compilation.

On appeal, Everett does not dispute Baker's testimony that Baker committed the offenses with three accomplices. He agrees that the evidence generally corroborates Baker's account of the crimes. This evidence includes testimony about the rivalry between the two neighborhoods, ballistics evidence, the fact that one of the guns used in the shootings was later found in the possession of Mangram's brother, the fact that Pegram and Mangram were together hours after the shootings, and the video footage showing the shootings unfold as Baker described. *See generally Barnes*, 81 Va. App. at 750-51 (listing as corroboration evidence that substantiated the accomplice testimony generally rather than only the evidence specifically tying Barnes to the murder).

Everett's argument narrowly challenges the existence of evidence specifically corroborating Baker's testimony identifying Everett as one of Baker's accomplices. The record, however, refutes this claim. The video compilation shows the assailants' route after the shootings. After parking the stolen car used in the attack, four males emerged. The video recording shows the assailants as they walked from the car to an apartment building. Video from the apartment stairwell briefly showed the profile of the person Baker identified as Everett.

Taken together, this evidence connects Everett to the crimes and clearly shows his "occasion and opportunity" to commit them. *See Barnes*, 81 Va. App. at 747 (quoting *Holmes*, 76 Va. App. at 57). As such, the record "is 'sufficient to warrant the jury in crediting the truth of the accomplice's testimony.'" *Id.* (quoting *Smith*, 218 Va. at 457). A cautionary jury instruction should not be given if the record contains corroborating evidence that "tend[s] to connect the accused [to] the crime[s]." *See id.* (quoting *Dillard*, 216 Va. at 823). That evidence does not need to be ironclad. Nor does it need to involve each element of the offense. *See Allard v. Commonwealth*, 218 Va. 988, 990 (1978). It just needs to "tend to connect" Everett to the offenses. *See Barnes*, 81 Va. App. at 747 (quoting *Dillard*, 216 Va. at 823).

When viewed under the proper standard, in the light most favorable to Everett, the evidence corroborates Baker's testimony that Everett participated in the shootings. Therefore, the trial court did not abuse its discretion by rejecting the cautionary instruction relating to accomplice testimony.

## II. Sufficiency of the Evidence

Everett challenges the credibility of Baker's testimony identifying him as one of the shooters. He emphasizes contradictions in Baker's testimony and argues that he had incentive to lie. Based on these points, he maintains Baker was an incredible witness as a matter of law. Everett further contends that without Baker's testimony, the evidence is insufficient to support his convictions.

Our role in reviewing a sufficiency challenge "is a limited one." *See Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). In this Court's review of the sufficiency of the evidence to support a conviction, we will affirm the decision unless it was plainly wrong or the conviction lacked evidence to support it. *See Hargrove v. Commonwealth*, 77 Va. App. 482, 506-07 (2023). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Hogle v. Commonwealth*, 75 Va. App. 743, 753 (2022) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). In conducting this review, the "appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Barney*, 302 Va. at 97 (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Instead, the "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)); *see also Commonwealth v. Holland*, ___ Va. ___, ___ (Jan. 16, 2025) (emphasizing the mandatory

- 10 -

nature of the standard of review despite the possible "tug . . . to put aside the appropriate standard of review to impose a result closer to our own notions of correctness").

An appellate court evaluating the sufficiency of the evidence "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). In fact, "[a] conviction may rest on circumstantial evidence alone." *Garrick*, 303 Va. at 183. The jury, acting as the fact finder, was responsible for "weigh[ing] the evidence" and "draw[ing] reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). And "[r]easonable inferences drawn by the factfinder 'cannot be upended on appeal unless we deem them so attenuated that they push into the realm of *non sequitur*.'" *Commonwealth v. Wilkerson*, ___ Va. ___, ___ (Feb. 20, 2025) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 332 (2018) (per curiam)).

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder," in this case the jury. *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). A reviewing court "must accept 'the [fact finder]'s determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019)).

The inherently incredible standard presents a high hurdle on appeal. "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or [it is] 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v.*

*Commonwealth*, 271 Va. 362, 415 (2006)). "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness'[s] testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.* As such, "'[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Id.* (alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)).

It is through this well-established legal lens that we view the sufficiency challenge to Baker's credibility. Although Baker contradicted himself at times during his testimony, those contradictions do not render his testimony inherently incredible. He was cross-examined extensively about inconsistencies in his testimony as well as about his pending charges related to the shootings. Baker admitted that by cooperating with the prosecution, he was hoping for leniency in his own sentencing. In addition, during closing arguments, defense counsel strenuously contended that Baker's testimony was not credible, putting the matter squarely before the jury.

The jury was instructed that its duties included assessing witness credibility. In the end, it obviously accepted Baker's testimony as credible. This conclusion may not be overturned on appeal because his testimony was not, as a matter of law, "inherently incredible[] or so contrary to human experience as to render it unworthy of belief." *See Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)). And Baker's potential motive for testifying was "appropriately weighed as part of the entire issue of witness credibility, which [wa]s left to the jury to determine." *Juniper*, 271 Va. at 415.

Further, Baker's testimony identifying Everett as a participant in the offenses was corroborated by the video exhibit. Richmond Police Detective Amira Sleem compiled the videos into the format in which the Commonwealth's exhibit was entered into evidence. The requirement

of appellate deference to the factfinder "applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of . . . video evidence.'" *Barney*, 302 Va. at 97 (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)).

Everett claims the video did not depict him, contrary to Baker's testimony that he was one of the four assailants. He points to differences in his facial hair and clothing. The person Baker identified as him in the video had a goatee, yet Baker testified that Everett at the time looked like he did in a photograph in which he did not have a goatee. Everett also emphasizes Baker's belief that Everett did not put on a jacket. The person Baker identified as him in the video did not have a jacket on when he entered the apartment but was wearing one when he left. In addition, Everett notes that the video of the stairwell bore a timestamp that preceded the shootings.[4] He suggests for these reasons that the video does not corroborate Baker's testimony.

During closing argument, Everett specifically pointed out how the person in the video Baker identified as him wore different clothing when he left the apartment. He also raised the factual issue of the questionable timestamp on the video. "The factfinder 'views video and other evidence to determine what it believes happened.'" *Barney*, 302 Va. at 97 (quoting *Meade*, 74 Va. App. at 806). It was within the jury's factfinding function to conclude that the stairwell video showed Everett entering and leaving the apartment. *Id.* (explaining that an appellate court "view[s] video evidence . . . for the limited purpose of determining whether any rational factfinder could have viewed it as the [factfinder] did" (third alteration in original) (quoting *Meade*, 74 Va. App. at 806)). Although it appears from the video that the person Baker identified as Everett did not have a jacket on when he entered the apartment and did when he left, despite Baker's testimony to the contrary, this detail

---

[4] The Commonwealth suggests that Everett waived this argument under Rule 5A:18 by failing to include it in his motion to strike. We assume without deciding that Everett adequately preserved the nuanced argument that the timestamps cast doubt on Baker's credibility. *See Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015).

does not render Baker's testimony inherently incredible as a matter of law. *See Grimaldo v. Commonwealth*, 82 Va. App. 304, 323 (2024). Similarly, the jury was permitted to find that the compilation video showed the route of the assailants after the attack. Although the timestamps on the various videos did not flow chronologically, Detective Sleem explained she put them in sequential order. She described the location of each camera and retraced the route herself.

The evidence was before the jury and supports its finding that Everett participated in the shooting. It was well within the jury's purview to evaluate the credibility of Baker's testimony as a whole as well as to decide what weight to assign to the video evidence. *See Barney*, 302 Va. at 97. This Court "may neither find facts nor draw inferences that favor the losing party that the factfinder did not." *See Garrick*, 303 Va. at 182.

Based on well-established legal principles, despite some inconsistencies, Baker's testimony was not inherently incredible. Instead, it supported other evidence of Everett's guilt. *See Green v. Commonwealth*, 78 Va. App. 670, 688 (2023) (holding that accomplice testimony and corroborating evidence sufficiently supported the convictions). For these reasons, the evidence was sufficient to support the convictions.

CONCLUSION

The court acted within its discretion by declining to caution the jury on the danger of relying solely on uncorroborated accomplice testimony. Further, Baker's testimony identifying Everett as a participant in the shootings was not inherently incredible as a matter of law, and therefore, the evidence was sufficient. Consequently, we affirm the convictions.

*Affirmed.*