COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


RONNIE LEE

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2181-99-3     JUDGE RUDOLPH BUMGARDNER, III
                                       AUGUST 29, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James F. Ingram, Judge

Elwood Earl Sanders, Jr., Appellate Defender
(Public Defender Commission, on brief), for
appellant.

(Mark L. Earley, Attorney General; Amy L.
Marshall, Assistant Attorney General, on
brief), for appellee.


The trial judge convicted Ronnie Lee of one count of driving after having been adjudicated an habitual offender in violation of Code § 46.2-357(B)(3). On appeal, he contends the trial judge erred in refusing to allow him to ask during cross-examination whether race was a criterion in selecting a traffic checkpoint. For the following reasons, we affirm the defendant's conviction.

I.

Field Training Officer Ricky Luck, of the Danville Police Department, testified that on May 11, 1999 he was in charge of a routine traffic checkpoint on the corner of Betts and Epps Streets

---

* Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

in the City of Danville.  In accordance with departmental policy, the deputy chief of police approved the checkpoint plan as part of the community-policing program.  All vehicles that came through the checkpoint were stopped.  The defendant's car was stopped. When an officer asked him if he had his license, the defendant said he did not have one.

During cross-examination, Officer Luck explained the criteria for selecting a checkpoint.  They included:  (1) location within the community-policing area; (2) the amount of traffic; (3) the number of past arrests in the area based on community-policing logs; (4) the physical proximity to an entrance to the community-policing area; (5) the visibility of the checkpoint for the motorists' and officers' safety, and (6) the width of the road which enabled officers to pull vehicles off the road safely. Defense counsel then asked Luck whether the housing development near the checkpoint was predominantly black.  The Commonwealth objected and asked, "What relevance does that have?"

Defense counsel claimed that if race was a factor in determining where to conduct the checkpoint, it adversely affected the black community.  The trial judge noted that the essence of public housing was a lack of racial bias, and because the checkpoint was conducted on a public street, he believed defense counsel was "injecting something into this, that's improper."  The trial judge sustained the Commonwealth's

-

objection.  Defense counsel accepted the judge's ruling:  "All right."

On appeal, the defendant contends the trial judge improperly limited his cross-examination of Officer Luck by refusing to allow him to ask whether race was an additional criterion used in establishing the checkpoint.  He argues the police did not use neutral criteria to select the checkpoint, and therefore, the results of the stop should be suppressed.

The defendant's claim is procedurally barred.  First, the defendant failed to file a motion to suppress the evidence in accordance with Code § 19.2-266.2.[1]  See Upchurch v. Commonwealth, 31 Va. App. 48, 53, 521 S.E.2d 290, 292 (1999) (statutory requirement that motion to suppress be timely filed is mandatory and trial court did not abuse its discretion in "finding lack of good cause for excusing" defendant's failure to do so).  The defendant also failed to proffer the answer Officer Luck would have given had the trial court permitted the question.  See Spencer v. Commonwealth, 238 Va. 563, 570, 385 S.E.2d 850, 854 (1989) (where defendant claims court erroneously

---

[1] Code § 19.2-266.2 provides that:

> Defense motions or objections seeking (i) suppression of evidence on the grounds such evidence was obtained in violation of the . . . Constitution of the United States or . . . the Constitution of Virginia . . . shall be raised by motion or objection, in writing, before trial.

-

limited cross-examination, record must contain proffer of both questions to be asked and expected answers), cert. denied, 493 U.S. 1093 (1990).  Absent a proper proffer of the anticipated evidence of the use of race as a criterion in selecting checkpoints, "we are precluded from a consideration of this issue on appeal."  Mostyn v. Commonwealth, 14 Va. App. 920, 924, 420 S.E.2d 519, 520 (1992) (citations omitted).  See Whittaker v. Commonwealth, 217 Va. 966, 968-69, 234 S.E.2d 79, 81 (1977).

In addition, the defendant is required to show the excluded evidence was relevant and material to his case.  See Toro v. City of Norfolk, 14 Va. App. 244, 254, 416 S.E.2d 29, 35 (1992). The defendant did not file a motion to suppress or challenge the constitutionality of the checkpoint.  He never raised the issue, so the issue of race was collateral and immaterial to his case. See Maynard v. Commonwealth, 11 Va. App. 437, 444, 399 S.E.2d 635, 640 (1990) (en banc) (cross-examination questions about existence of probable cause are irrelevant to the issue of guilt or innocence because defendant did not challenge the legality of his arrest).  Cf. Stewart v. Commonwealth, 10 Va. App. 563, 568, 394 S.E.2d 509, 512 (1990) (no abuse of discretion where defense counsel properly prevented from engaging in a fishing expedition).

Accordingly, we affirm the conviction.

Affirmed.

-

Benton, J., dissenting.

The right to cross-examine prosecution witnesses is "fundamental to the truth-finding process [and] is an absolute right guaranteed to an accused by the confrontation clause of the Sixth Amendment." Barrett v. Commonwealth, 231 Va. 102, 108, 341 S.E.2d 190, 194 (1986). "While it is true that the trial [judge] may, in the exercise of discretion, limit cross-examination of a witness within reasonable bounds, that does not mean that in the exercise of such judicial discretion [the trial judge] should exclude relevant evidence." Hummel v. Commonwealth, 217 Va. 548, 550, 231 S.E.2d 216, 217 (1977). "Subject to such reasonable limitations as the trial [judge] may impose, a party has an absolute right to cross-examine his opponent's witness on a matter relevant to the case, which the opponent has put in issue by direct examination of the witness." Washington v. Commonwealth, 228 Va. 535, 549, 323 S.E.2d 577, 587 (1984).

The issue of the criteria used to establish the roadblock was relevant and was placed in issue by the prosecutor when he presented testimony from Officer Ricky Luck concerning "procedures mandated by departmental policies" for the roadblock. On cross-examination, Officer Luck testified that "all of our [driver's license traffic] checks are located near housing developments, or near the areas that we walk, and patrol [as part of the community-policing program]." Ronnie Lee's

-

counsel was entitled to explore this and the other criteria used to establish the roadblock.

The following exchange occurred between Lee's counsel and Officer Luck on cross-examination:

> [DEFENSE COUNSEL]: Well, do you run traffic checks . . . traffic count checks all over the city of Danville. . . .
>
> [OFFICER LUCK]: Yes.
>
> [DEFENSE COUNSEL]: . . . or just in those areas?
>
> [OFFICER LUCK]: No. We go all over . . . community police . . . we only do them within our areas.
>
> [DEFENSE COUNSEL]: Okay.
>
> [OFFICER LUCK]: Patrol goes all over the city.
>
> [DEFENSE COUNSEL]: All right, so community police, if I understand it, only do it within the areas that you previously identified to me? Is that correct?
>
> [OFFICER LUCK]: Yes. But now, again, we go several blocks . . . we can go several blocks away from it. Now this is just a policy within community police.
>
> *    *    *    *    *    *    *
>
> [DEFENSE COUNSEL]: And that was the criteria that was used to draw . . . to have this stop?
>
> [OFFICER LUCK]: Yes.
>
> [DEFENSE COUNSEL]: Now, the housing development that's over there near Betts and Epps Streets . . .
>
> [OFFICER LUCK]: Uh-huh.

-

> [DEFENSE COUNSEL]: . . . it's predominantly
> black, isn't it?
>
> [PROSECUTOR]: Objection. What relevance
> does that have?

The record clearly establishes that Lee's counsel preserved for the record his argument that his question was relevant and that the area the police chose for the roadblock was predominantly African-American. After the prosecutor objected as to the relevance of Lee's counsel's questions concerning the racial composition of the housing development near the checkpoint, the following colloquy occurred between Lee's counsel and the trial judge:

> [DEFENSE COUNSEL]: It has good relevance.
> If the community police are picking things
> that have an adverse impact on the black
> community, then it has some relevance.
>
> [PROSECUTOR]: No it doesn't.
>
> [DEFENSE COUNSEL]: And if they are choosing
> that as a criteria for where their stops are
> going to be made . . . that's it . . . and
> that's why I'm asking these questions.
>
> [PROSECUTOR]: I don't think . . . I don't
> think race has got anything to do with this
> case.
>
> [DEFENSE COUNSEL]: If they are choosing
> areas that are predominantly black, it does
> have something to do with it, because there
> are predominantly going to be black people
> in it.
>
> [PROSECUTOR]: Judge, he has testified they
> choose the areas where they patrol. I mean,
> that's got nothing to do with the racial
> composition of the areas they patrol.

-

[DEFENSE COUNSEL]:  The areas that they patrol have been identified . . . are those areas that you identified, that are owned by the Public Housing Authority . . . are those predominantly . . . the occupants predominantly black?

[PROSECUTOR]:  Objection.

 *      *      *      *      *      *      *

[DEFENSE COUNSEL]:  I have to ask these questions, as to the basis of it.

THE COURT:  Well, I think you are . . . I think you are entitled to ask him questions about the thing . . . , but I don't think that race is one of the issues to be injected into this.  If it's public streets, and there are people of all races living in these areas . . . I think you are out of line on that.

[DEFENSE COUNSEL]:  Well, Judge, that's to be established.  According to his testimony, the areas that they are . . . that they are set up in . . . community policing . . . from what I understand, are things that are owned by the Danville Redevelopment and Housing Authority.  Now again, I've been away from Danville a long time, but the ones that I know about . . . and this one I know about, over there, I know what the composition of it was, and I'm asking that . . . if that's going to be a criteria, I think that . . . that has got to be set out here, and that ought to be set out here, because as we are making a record, we have to make the record full, and this Court . . . and the Supreme Court of Virginia . . . the Court of Appeals have looked at these stops, and they . . . these stops have . . . are subject to a greater constitutional scrutiny, because of the way they are done . . . .

-

[JUDGE]:  Well, the Redevelopment and Housing Authority is predicated on the thing that it's open to . . .

[DEFENSE COUNSEL]:  Oh, I agree Judge . . . I . . .

[JUDGE]:  . . . people of all races, creeds and colors [counsel], so I mean I think you are attacking it on that, the every basis of the foundation of the thing is that there be no racial bias in that.

[DEFENSE COUNSEL]:  I agree with . . .

[JUDGE]:  And we're talking about public streets.  We don't know who is going to be coming down the street, using the public roads, so I think you are injecting something into this, that's improper.

[DEFENSE COUNSEL]:  All right.

Defense counsel's argument was sufficient to preserve for appeal the issues of criteria for establishing the roadblock. The trial judge simply did not want defense counsel to inquire whether race was a factor in locating the roadblock.  Indeed, the trial judge resisted defense counsel's best efforts to establish any more of a record as to the actual racial composition of the housing development, saying his efforts were "improper."  In view of defense counsel's statements on the record and the trial judge's admonition to defense counsel, I would hold that Lee's counsel created an adequate record to preserve the issue of the criteria for establishing the roadblock and the issue of relevance.

-

The trial judge should not have barred cross-examination to prove this evidence because whether the neighborhood is or is not predominantly African-American was relevant to the issue whether the checkpoint was based on neutral criteria or had a discriminatory impact. The Commonwealth bears the burden of proving that a "roadblock [has been] carried out pursuant to a plan or practice which . . . contains neutral criteria." Simmons v. Commonwealth, 238 Va. 200, 202-03, 380 S.E.2d 656, 658 (1989); see also Brown v. Commonwealth, 20 Va. App. 21, 25, 454 S.E.2d 758, 759 (1995). Thus, the question of impermissible criteria is germane not just to suppression of evidence but also to whether the prosecution itself is lawful.

"Selectivity in the enforcement of criminal laws is . . . subject to constitutional constraints." United States v. Batchelder, 442 U.S. 114, 125 (1979). Indeed, the Equal Protection Clause of the Constitution prohibits selective enforcement of the law based on considerations such as race. See Arnold v. North Carolina, 376 U.S. 773, 774 (1964); Oyler v. Boles, 368 U.S. 448, 456 (1962). When, as in this case, the neutrality of the criteria is at issue, the Equal Protection Clause guarantees the defendant the right to inquire about the use of race as an impermissible factor as a defense to the prosecution. See Turner v. Murray, 476 U.S. 28, 35-36 (1986); Ham v. South Carolina, 409 U.S. 524, 529 (1973). A conviction cannot be based upon state activity that denies an accused equal

-

protection of the law.  See Brown v. Louisiana, 383 U.S. 131

(1966); Wright v. Georgia, 373 U.S. 284 (1963).

For these reasons, I would hold that the trial judge erred

in limiting cross-examination on a relevant issue.  Accordingly,

I would reverse the conviction and remand for retrial,

permitting consideration of the evidence concerning racial

composition of the area adjacent to the checkpoint and the

criteria for placing the checkpoint.

I dissent.