COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Petty and Senior Judge Annunziata
Argued by teleconference


KARIM JEHAD KAHLIL

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 0705-07-4                JUDGE WILLIAM G. PETTY
                                                    MAY 6, 2008
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                           Benjamin N.A. Kendrick, Judge

            Harry A. Dennis, III, for appellant.

            Benjamin H. Katz, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Karim Jehad Kahlil, appellant, argues that his conviction following a jury trial for robbery,

in violation of Code § 18.2-58, should be reversed and dismissed because of a violation of his rights

under the double jeopardy provision of the Fifth Amendment to the United States Constitution.

Because we determine that Kahlil waived his double jeopardy rights, we do not address the

merits of Kahlil's argument that the trial court lacked the requisite manifest necessity to declare a

mistrial in his first trial and that his subsequent trial accordingly violated his Fifth Amendment

right against double jeopardy.

                                    I. BACKGROUND

        On appeal, we review the facts in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).

That principle requires us to "'discard the evidence of the accused in conflict with that of the

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)).

This case was originally set for a jury trial on May 22, 2006. Immediately prior to trial, Kahlil moved for a continuance due to the failure of one of his witnesses to appear.[1] After some discussion, the circuit court denied the motion, and jury selection commenced. After the jury had been selected and sworn, one of the jurors belatedly revealed to the circuit court that she would not be available for jury duty beyond that day. The following colloquy between the trial court and the parties ensued:

> [Trial Court]: Have a seat, folks. Counsel, what do you want to do?
>
> [Defense Attorney]: I believe the jury has been sworn in, Your Honor.
>
>     *   *   *   *   *   *   *
>
> [Trial Court]: [W]e're in a difficult spot now because the jury has been sworn. Jeopardy has attached. And so we have a difficult problem . . . .
>
> [The trial court admonished the juror for failing to inform the court that she was unavailable the next day.]
>
>     *   *   *   *   *   *   *
>
> [Trial Court]: Counsel, any input?

---

[1] The transcript of the May 22, 2006 trial proceedings begins with the jury selection. However, at the August 3, 2006 hearing on the motion to dismiss, the Commonwealth, in the presence of Kahlil's defense counsel and before the trial judge, indicated that the motion for continuance occurred immediately prior to the beginning of proceedings on that day because a defense witness had failed to appear for trial. See Toro v. Norfolk, 14 Va. App. 244, 253, 416 S.E.2d 29, 35 (1992) ("An unchallenged avowal by counsel is a proper proffer." (citing Whittaker v. Commonwealth, 217 Va. 966, 969, 234 S.E.2d 79, 81-82 (1977))). Moreover, the record in this case contains a bench warrant for a defense witness who failed to appear on May 22, 2006.

[Defense Attorney]: I'm at a loss, Your Honor.

[Commonwealth]: Likewise. Your Honor, I think the Court would have to find that there is good cause in order to call off the proceedings at this point. And I would submit that the juror stating that she cannot be here, she has been excused and that staying here would be a hardship both on her personally as well as financially puts the jury composition in a very bad light. And I just don't think that it would be going forward for either party, it would be in the interests of justice.

\*     \*     \*     \*     \*     \*     \*

[Trial Court]: [Kahlil] has a right to a fair trial, and the longer it's delayed, it's not good for him. It's not good for the system. It's not good for anybody. He has an absolute right to have this matter resolved by a fair and impartial jury, as does the Commonwealth, as does this community. . . . I'm finding a manifest injustice or a manifest reason to declare a mistrial.

[Defense Attorney]: Please note my exception, Your Honor.

[Trial Court]: Your exception is noted for the record. Now, what this means, we're going to have to start all over again. You're excused, [juror].

\*     \*     \*     \*     \*     \*     \*

[Trial Court]: Now, let me ask [the parties] this. Do you want to start all over again with what's left of the members of this community that are left, or do you want to continue to another day? It's up to you two.

[Commonwealth]: I would be just as happy to proceed.

[Defense Attorney]: I think it's not appropriate at this point to start again with a pool that has already been selected and has strike members in it.

[Trial Court]: Well, you're given the opportunity. I want the record to reflect you're given the opportunity.

[Defense Attorney]: No, Your Honor, I do not wish to go forward with this jury pool.

After this conversation, the circuit court granted Kahlil's motion to continue, declared a mistrial based on its earlier finding of manifest necessity, and discharged the jury. After the jury

- 3 -

was dismissed, the defense counsel asked to "make a record." The defense attorney stated as follows:

> Thank you, Your Honor. Just for the record, the jury was sworn in. I did object to the allowing of [the juror] to be released.
>
> I understand why the Court did it, but I do believe that her reasons were not sufficient for being released, as the Court made it abundantly clear that if anyone was not available for tomorrow, that they were to notify the Court.
>
> Her failing to notify the Court was effectively a waiver of her inability to be here tomorrow. And as such, I believe that jeopardy has attached, so I wish to make that for the record.

In response to this objection, the circuit court emphasized, "The defendant was given an opportunity to select another jury and refused to indulge in that process." Kahlil was subsequently tried following the trial court's denial of his motion to dismiss the charge on double jeopardy grounds, and convicted of robbery. This appeal followed.

## II. ANALYSIS

### Standard Of Review

Whether a criminal defendant waives his Fifth Amendment right against double jeopardy is "not a question of historical fact [] but one which . . . requires application of constitutional principles to the facts as found." Brewer v. Williams, 430 U.S. 387, 404 (1977). Accordingly, we review the circuit court's factual determinations only for clear error; however, whether Kahlil's actions and statements constituted a waiver is a "'legal determination that we review *de novo*.'" Commonwealth v. Redmond, 264 Va. 321, 327, 568 S.E.2d 695, 698 (2002) (quoting United States v. Uribe-Galindo, 990 F.2d 522, 523 (10th Cir. 1993)). To determine whether Kahlil consented to the mistrial in this case, and accordingly waived his double jeopardy rights, we must examine the totality of the circumstances that existed below. See United States v. Goldstein, 479 F.2d 1061, 1067 (2d Cir. 1973) (citing United States v. Gori, 282 F.2d 43, 46 (2d

Cir. 1960)); see also United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824) (Whether a manifest necessity exists to declare a mistrial must be evaluated based on the totality of the circumstances in the trial court because "it is impossible to define all the circumstances which would render it proper to" discharge a jury.). Finally, in making this examination, we "indulge every *reasonable* presumption against" concluding that a criminal defendant has waived a fundamental constitutional right. Allen v. Commonwealth, 252 Va. 105, 111, 472 S.E.2d 277, 281 (1996) (citations omitted) (emphasis added). Applying this standard, we find that this record provides ample evidence that Kahlil consented to the mistrial and thereby waived his double jeopardy argument.

### Consent To A Mistrial

In a jury trial, jeopardy attaches once the jury is sworn; at that point, the defendant is vested with a constitutional right to have his case decided by that specific jury. Crist v. Bretz, 437 U.S. 28, 36 (1978); King v. Commonwealth, 40 Va. App. 364, 372, 579 S.E.2d 634, 639 (2003).[2] That right is not, however, absolute. In some instances "a defendant's valued right to have his trial completed by a particular tribunal must . . . be subordinated to the public's interest in fair trials designed to end in just judgments." Wade v. Hunter, 336 U.S. 684, 689 (1949). The tension between these opposing interests – the accused's right to have the charges against him adjudicated by his original jury, and the public's interest in having fair trials – has been reconciled by a long line of Supreme Court cases holding that a mistrial may be granted over the

---

[2] The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V.

defendant's objection only when required by "manifest necessity." Arizona v. Washington, 434

U.S. 497, 505 (1978); Perez, 22 U.S. (9 Wheat.) at 580.[3]

The manifest necessity doctrine is not implicated, however, when a defendant requests or

otherwise consents to the granting of a mistrial. The requirement for manifest necessity

"operates . . . only when the trial court has declared a mistrial without the consent of the

defendant. When the defendant has moved for a mistrial or consents to its declaration, the

double jeopardy clause will not bar his retrial." United States v. Puleo, 817 F.2d 702, 705 (11th

Cir.) (citing United States v. Scott, 437 U.S. 82, 93 (1978)), cert. denied, 484 U.S. 978 (1987).

Thus, when a criminal defendant consents to a mistrial, he waives his right to challenge his

subsequent retrial on double jeopardy grounds. Id. Not only "may [a criminal defendant] waive

his" double jeopardy rights in the mistrial context, "[t]his waiver may be express or implied."

Mack v. Commonwealth, 177 Va. 921, 929, 15 S.E.2d 62, 65 (1941); see also Puleo, 817 F.2d at

705 ("[W]here the trial judge expressed a clear intent to declare a mistrial and the defense

counsel had an opportunity to object but did not" the appellant "consented to the mistrial" and

noting, "[i]t has certainly never been the rule that consent need be express; indeed, consent may

always be 'implied from the totality of circumstances attendant on the declaration of a mistrial.'"

(quoting Goldstein, 479 F.2d at 1067)).

Both our Supreme Court and several federal circuit courts have held on facts similar to

those before us today that the failure to make "an express objection to the circuit court's

declaration of a mistrial" is an important factor in determining whether an "implicit consent[]" to

the mistrial and a waiver of double jeopardy protections existed. Commonwealth v. Washington,

---

[3] This standard has also been codified in Virginia: "the court may, in its discretion . . . discharge the jury when it appears that . . . there is manifest necessity for such discharge." Code § 8.01-361.

263 Va. 298, 304-05, 559 S.E.2d 636, 639 (2002)[4]; see also Puleo, 817 F.2d at 705; Goldstein, 479 F.2d at 1067.

In Washington, as in this case, the circuit court declared a mistrial *sua sponte* after encountering difficulties in seating a jury. There, both the defense counsel and the Commonwealth exercised their preliminary strikes, and the jury was sworn. 263 Va. at 300, 559 S.E.2d at 637. The circuit court then "directed the jurors who were excused the following day to raise their hands, and one juror did so." Id. The circuit court accordingly recognized the need to seat alternate jurors, but "[t]here were only two potential veniremen available to serve as an alternate who were not among the original 20 individuals selected as members of the jury panel." Id. The trial court proposed that, in addition to these two individuals, it would add "two of the

---

[4] We realize that Washington has been criticized by the United States Court of Appeals for the Fourth Circuit. See Washington v. Jarvis, 307 Fed. Appx. 543, 553 (4th Cir. 2005) aff'g 307 F. Supp. 2d 794, 809 (E.D. Va. 2004) (granting writ of *habeas corpus*). However, the decisions of our Supreme Court are binding precedent for this Court. See Anderson v. Commonwealth, 48 Va. App. 704, 713 n.2, 634 S.E.2d 372, 376 n.2 (2006):

> Only decisions of the United States Supreme Court can supersede binding precedent from the Virginia Supreme Court. See generally Lockhart v. Fretwell, 506 U.S. 364, 376 (1993) (Thomas, J., concurring) ("[N]either federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation."); United States ex rel. Lawrence v. Woods, 432 F.2d 1072, 1075-76 (7th Cir. 1970) (agreeing that, when "passing on federal constitutional questions, the state courts and the lower federal courts have the same responsibility and occupy the same position; there is a parallelism but not paramountcy for both sets of courts are governed by the same reviewing authority of the Supreme Court" (citation omitted)); Owsley v. Peyton, 352 F.2d 804, 805 (4th Cir. 1965) (rejecting the argument that a Fourth Circuit decision "changed existing law" in Virginia courts, as Virginia courts are "not obliged" to follow Fourth Circuit decisions).

Moreover, we note that our Supreme Court recently cited Washington with approval in Magruder v. Commonwealth, 275 Va. 283, 303, 657 S.E.2d 113, 123 (2008), for the proposition that double jeopardy rights may be waived expressly or implicitly.

jurors who had been stricken by defendant's counsel and the Commonwealth's Attorney" and allow the parties to each strike one potential alternate juror. Id.

Both the Commonwealth and the defense objected to the trial court's proposal. Id. at 301, 559 S.E.2d at 637. After further discussion about the circuit court's proposed solution and the circuit court's acknowledgment that jeopardy had attached, the trial court declared a mistrial because there were "not sufficient jurors to have a replacement" sworn. Id. The Commonwealth and the defense then both participated in setting a date for the retrial. Id. at 301, 559 S.E.2d at 638. The defense also moved to dismiss the indictment on double jeopardy grounds at the subsequent trial. Id. at 300, 559 S.E.2d at 638.

On these facts, our Supreme Court held that "the defendant implicitly consented to the circuit court's declaration of a mistrial. Having consented to the mistrial, the defendant waived his double jeopardy rights." Id. at 304-05, 559 S.E.2d at 639. Our Supreme Court reasoned that Washington had a meaningful opportunity to object at trial and that he engaged in a "dialogue" with the trial court, during which time he did not "express [an] objection" to the court's declaration of a mistrial. Id. at 305, 559 S.E.2d at 639. Instead, Washington only objected to the possibility of an "alternate . . . know[ing] that [he was an alternate] . . . ." Id. at 301, 559 S.E.2d at 637.

### Application

In the case before us, Kahlil points to two statements to support his argument that he did not implicitly consent to a mistrial. The first was Kahlil stating, "please note my exception" after the circuit court's finding of a manifest necessity to declare a mistrial. Our Supreme Court has "repeatedly and consistently held that a litigant must object to a ruling of the circuit court if that litigant desires to challenge the ruling on appeal." Washington, 263 Va. at 304, 559 S.E.2d at 639. This requirement is satisfied if "a party, at the time the ruling . . . of the court is made . . .

- 8 -

makes known to the court the action which he desires the court to take or his objections to the action of the court and his grounds therefor." Code § 8.01-384(A). The phrase "please note my exception" does not communicate anything beyond general disagreement with the ruling of the court. See, e.g., Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (*en banc*) (discussing Rule 5A:18 and concluding that the endorsement of an order "Seen and objected to" is not specific enough to meet the requirements of Rule 5A:18 because it does not sufficiently alert the trial court to the claimed error); see also Mackie v. Hill, 16 Va. App. 229, 231, 429 S.E.2d 37, 38 (1993) (endorsing an order as "Seen and objected to" satisfies Rule 5A:18 only if "the ruling made by the trial court was narrow enough to make obvious the basis of appellant's objection").[5]

Second, after the declaration of the mistrial and the dismissal of the jury, Kahlil made his objection to the trial court's finding of a manifest necessity based on the juror's unavailability. Kahlil concluded his statement by saying: "I believe that jeopardy has attached, so I wish to make that for the record." However, at that point the jury had been discharged and the harm that had been done could not be remedied. Hence, this objection was simply not timely. See Hogan v. Commonwealth, 5 Va. App. 36, 45, 360 S.E.2d 371, 376 (1987) ("The primary purpose of [requiring a] contemporaneous objection . . . is to advise the trial judge of the action complained of so that the court can consider the issue intelligently and, if necessary, take corrective action to avoid unnecessary appeals, reversals, and mistrials." (citation omitted)).[6]

---

[5] We do not decide this case on Rule 5A:18 grounds; however, the concept of waiver and the contemporaneous objection rule are interrelated. See Washington, 263 Va. at 304, 559 S.E.2d at 639 (collected cases).

[6] We further note that the order declaring the mistrial and granting a continuance recited that the defendant moved for the mistrial, indicating that the circuit court was not, in fact, aware of Kahlil's opposition to the mistrial itself.

Even assuming *arguendo* that Kahlil's statements were proper objections, they did not touch upon the correct issue. At best, Kahlil objected not to the declaration of the mistrial, but to the trial court's discharge of the juror. Prior to declaring a mistrial and discharging the jury the trial court repeatedly asked Kahlil's defense counsel for input. However, Kahlil, while protesting that the juror should not be dismissed, did not provide the trial court with any argument relevant to the double jeopardy issue, despite many opportunities to do so. The Seventh Circuit has addressed a similar situation:

> Parties may give assent in many ways. If a judge should say: "I think a mistrial would be a good idea, but think this over and let me know if you disagree", *the defendant's silence would be assent.* The principal functions of the double jeopardy clause are to allow a defendant to get a verdict at the first trial if he wants one and to keep a verdict that is favorable. Whether the defendant wants a verdict is something he knows best, and when the occasion for choice comes he must choose unless, as in [United States v. Jorn, 400 U.S. 470, 487 (1971) (holding that Jorn's Fifth Amendment right against double jeopardy was violated after the trial court "abruptly" declared a mistrial in his first trial)], the judge brooks no opposition, or unless there is insufficient time to deliberate.

United States v. Buljubasic, 808 F.2d 1260, 1265-66 (7th Cir. 1987) (emphasis added) (citation omitted). The United States Supreme Court has also long recognized, "[n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." Yakus v. United States, 321 U.S. 414, 444 (1944) (citations omitted).

While Kahlil's failure to object to the circuit court's declaration of a mistrial is a weighty factor in our totality of the circumstances analysis, it is not the only one. We also note that Kahlil had moved for a continuance immediately prior to jury selection due to the absence of one of his witnesses. While Kahlil was certainly free to make the strategic decision to allow the declaration of a mistrial in order to buy more time for his defense, that decision does not

implicate the policies of the Fifth Amendment. Cf. Goldstein, 479 F.2d at 1067 (determining that appellant had consented to the mistrial and accordingly waived his double jeopardy argument when "[d]efendants had moved for a mistrial a scant two hours before one was declared . . . ").

Moreover, Kahlil, like Washington, refused the circuit court's proposed remedy to the jury conflict. Prior to declaring the mistrial, the circuit court gave Kahlil the opportunity to replace the dismissed juror that day and move forward with the trial. [7] Code § 8.01-361 empowers trial courts to replace a juror who is "unable from any cause to perform his duty" with "another qualified juror to be sworn in his place . . . ." Kahlil refused to consent to this procedure, instead choosing to have the trial continued to another day. Only then, after Kahlil refused the circuit court's remedy, did the circuit court declare the mistrial and discharge the jury. Accordingly, we conclude that the record shows that Kahlil implicitly consented to the mistrial and that, pursuant to our Supreme Court's holding in Washington, Kahlil waived his double jeopardy rights.

### III. CONCLUSION

For the foregoing reasons, we affirm Kahlil's conviction.

Affirmed.

---

[7] Here, the circuit court's statement, "we're going to have to start all over again," and its question, "Do you want to start all over again with what's left of the members of this community . . ." are somewhat unclear as to what corrective action it was proposing. However, we are bound in the absence of "clear evidence to the contrary in the record" to presume that the circuit court "correctly applied [the law] to the facts. Furthermore, we will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 292 (1977). Instead, it is incumbent on the appellant to provide a record on appeal sufficient to establish error. Twardy v. Twardy, 14 Va. App. 651, 658, 419 S.E.2d 848, 852 (1992) (*en banc*). Thus, we cannot conclude that the trial court's intentions were anything other than to renew jury selection solely to replace the discharged juror with another member of the venire pursuant to Code § 8.01-361.